## MERCHANTS AND MINERS TRANSPORTATION COMPANY *v.* JACKSON.

The charges complained of, when read in connection with the context, could not have been understood by the jury as instructing them that the master was an insurer, or bound to furnish or keep an absolutely safe place in which the servant was to work. There was evidence sufficient to support the verdict for the plaintiff.

Argued April 12, — Decided May 11, 1904.

Action for damages. Before Judge Norwood. City court of Savannah. December 18, 1903.

Jackson sued the Merchants and Miners Transportation Company for damages for personal injuries, alleging that he had been employed to work in the hold of a vessel to move timber, which was lowered through an open hatchway; that it was the master's duty to furnish him a safe place in which to work; that in pursuance thereof a tender had been employed to stand at the hatch to inform those in the hold when any object was to be thrown or lowered therein, so as to give warning and an opportunity to get out of the way of falling objects; that the hatch-tender had performed the duty imposed until about seven o'clock a. m., when the vice-principal of the company gave the signal which was customarily used for the purpose of calling all hands from their place of work; that when this whistle blew, and in obedience thereto, the hatch-tender left the hatchway open and unguarded; that Jackson, who was in the hold did not hear the whistle, and did not know of the fact that the hatch-tender had been called away; that in

the exercise of ordinary care and in the discharge of his duty he remained at work under the opening, and while so engaged another employee threw a heavy object into the hatchway, inflicting serious injury on the plaintiff.    The defendant insisted that the injury was occasioned by the negligence of a fellow-servant; contended that the hatch-tender was present; denied that there was any custom requiring the hatch-tender to leave when the whistle was blown; and denied that any whistle was blown, or that the master's, alter ego called the hatch-tender from the position at which he had been stationed.    The company also contended that if the hatch-tender had in fact left, it was in disobedience to the master's orders, which required him to remain at the place selected, at the time and place when the injury happened.    The jury found a verdict for the plaintiff.    The defendant made a motion for a new trial upon the ground that the court charged that the master was bound to furnish a servant with a safe place at which to work, and was bound to keep it safe.    In the general charge the court instructed the jury that "it is the duty of the master to provide for his servant a reasonably safe place in which to work, and to that end he is bound to make reasonable provision for the protection of the servant against injuries to which he might be exposed while engaged in the work he is employed to perform.    If you should find that, in order to discharge the duty due the plaintiff, the defendant placed a hatch-tender at the hatchway to give those working in the hold of the ship the necessary warning, and the trucks which fell upon the plaintiff were thrown down the hatchway while the hatch-tender was absent in disobedience of the company's instructions, or without its knowledge, and some other coemployee of the plaintiff threw the trucks in the hold, and thereby injured the plaintiff, then the company would not be liable. . . If the company's hatch-tender was actually present and failed to give the plaintiff warning, the company would not be liable, because the injury would then be attributable to the negligence of a fellow-servant. . .    Should you find that the hatch-tender had absented himself with the knowledge of the company, or because of instructions of the company, then the company would be liable. . .    There is no allegation in this case or proof submitted to show that the company placed a man known to be incompetent at the hatchway as hatch-tender, or whom the com-

pany ought to have known, in the exercise of ordinary care, to be incompetent.    So that in order for the defendant to make out a complete defense it is only necessary for it to show that the hatch-tender was actually present, or, if not present, that he did not leave the hatch with the knowledge or by the order of the defendant."    For a former report of this case see 118 *Ga.* 651.

*O'Connor, O'Byrne & Hartridge,* for plaintiff in error.
*Shelby Myrick* and *Robert L. Colding,* contra.

LAMAR, J.    From an examination of the charge as a whole it is evident that the jury could not possibly have understood the court to instruct them that the master was an insurer, or bound to furnish and keep an absolutely safe place in which the servant was to work.    On the contrary he clearly, explicitly, and pointedly charged that the plaintiff could not recover if the hatch-tender was present when the heavy object was thrown into the hold.; nor if the hatch-tender had negligently or voluntarily abandoned his post of duty so as not to be in a position to warn the plaintiff when the trucks were thrown into the opening.    Taken in its context, the instruction as to the duty of the master to keep the place safe meant that it could not appoint a hatch-tender and then order him away.    As a whole the charge was an admirable presentation of the law contained in the Civil Code, §§ 2611, 2612, in its application to the facts under investigation.    There was no error in the charge; and the evidence being sufficient to sustain the verdict, the judgment is    *Affirmed.    All the Justices concur.*